UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. Cr.-05-416 (RWR) |
| | : | |
| v. | : | VIOLATIONS: 21 U.S.C. §846 |
| | : | (Conspiracy to Distribute and Possess With |
| JOSEPH LANGLEY | : | Intent to Distribute Cocaine Base) |
| | : | |
| Defendant. | : | |
| | : | UNDER SEAL |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing with respect to defendant Joseph Langley.

**Procedural and Factual Background**

In March of 2005, the defendant, Joseph A. Langley, was one of fifteen defendants charged in a 73-count indictment, charging among other things, participation in a narcotics conspiracy, as well as individual acts of drug-dealing and weapons possession, in violation of 21 U.S.C. §§ 841, 846, and 18 U.S.C. §§ 922(g)(1), 924(c)(1), and other statutes.

Mr. Langley was not apprehended immediately after this indictment was unsealed. In fact, Langley was ultimately arrested down in South Carolina, in late April, approximately a month later. As discussed in more detail below, the government had reason to suspect that Langley might have fled down to South Carolina once he heard that the indictment was returned against him. The government also had reason to suspect that Langley's then-girlfriend, who was also an MPD police officer, assisted him by not making his whereabouts known to the authorities

1

once the United States Marshals were out looking for him.

During the months following his arrest in this matter, Langley debriefed with the government. As a result of these debriefings, Mr. Langley agreed to enter into a cooperation plea agreement. Specifically, on November 22, 2005, Mr. Langley pled guilty to a one-count sealed information in accordance with a cooperation agreement charging him with conspiracy to distribute and possess with intent to distribute cocaine base, in violation of 21 U.S.C. Sections 846 and 841(b)(a)(A)(iii).

In the plea agreement and proffer of evidence to which he agreed, Langley admitted to, among other things, the following: (1) responsibility for at least 500 grams but less than 1.5 kilograms of "crack" cocaine base; (2) buying and selling "wholesale" amounts of crack cocaine in the Congress Park neighborhood to and with various other crack cocaine dealers, many of whom he identified; and (3) participating in a narcotics conspiracy in Congress Park from on or about 1994 through March of 2005. In addition, Langley agreed to cooperate with the government, and further agreed that the determination of whether he has provided substantial assistance pursuant to either Section 5K1.1 of the Sentencing Guidelines or 18 U.S.C. § 3553(e), was within the sole discretion of the United States Attorney's Office for the District of Columbia.

Pursuant to the Presentence Investigation Report ("PSI"), Mr. Langley has a total offense level of 29 and a criminal history category of I, and therefore faces a guideline range of imprisonment of 87 to 108 months. See PSI at Paragraphs 20, 23, and 47. In addition, Mr. Langley is safety valve eligible, meaning that the mandatory minimum of 10 years incarceration pursuant to 21 U.S.C. Sections 846, 841(a)(1) and (b)(1)(A)(iii) is not necessarily applicable. See PSI at Paragraphs 46 and 49-52.

**<u>Argument</u>**

While Mr. Langley has provided some assistance to the government, the Departure Committee ultimately concluded, after careful consideration, that on balance, Mr. Langley's assistance did not rise to the level of substantial assistance. Accordingly, the government is not recommending to this Court that Mr. Langley receive a sentencing departure pursuant Section 5K1.1 of the Sentencing Guidelines and/or 18 U.S.C. § 3553(e). However, in light of Mr. Langley's admission of guilt, debriefings, criminal history, and age, the government does not oppose Mr. Langley receiving the benefits of the safety valve provision, and a sentence at the low-end of the recommended Sentencing Guidelines range.

One the positive side, Mr. Langley debriefed shortly after he was brought to the jurisdiction, and provided some credible and corroborated information regarding various acts of drug dealing in Congress Park and elsewhere. Mr. Langley did not testify for the government, but he indicated a willingness to do so. In addition, Mr. Langley is somewhat older than many of his fellow Congress Park co-conspirators (he is 47 years old), does not have violence in his background, and has served in the U.S. Army (he was honorably discharged in 1983). In addition, Mr. Langley's relatively minimal history, coupled with the fact that he demonstrated an ability to maintain gainful employment at the time that he was arrested in this case (<u>see</u> PSI at Paragraph 38-39), all mitigate in favor of this Court giving Mr. Langley leniency.

However, there are other factors which ultimately weigh against reaching a conclusion that Langley substantially assisted the government. First, as indicated above, Langley was on fugitive status for over a month before he was ultimately apprehended by authorities down in South Carolina. This obviously required a great amount of additional government resources, and

potentially compromised the safety of various law enforcement personnel.  In addition, Langley's then-girlfriend was an MPD officer, who was down in South Carolina with him at the time he was arrested in late April 2005.  These suspicious circumstances, coupled with Langley's and his girlfriend's blanket denial that she knew nothing of his fugitive status (and similar denial that she was in any way complicit in his evasion from the authorities for a month) never rang true.

In fact, during the summer of 2005, Langley took an FBI-administered polygraph test, and was found to be deceptive with respect to questions about what his girlfriend did, or did not, know about his whereabouts in South Carolina and his fugitive status.  Partly based on this failed polygraph, the government believed Langley's usefulness as a potential trial witness was minimal at best.  Indeed, the government did not call him as a trial witness in part because of its belief in his lack of complete disclosure on this issue.  Indeed, other than pleading quickly (after his apprehension) and debriefing on a few occasions, Langley ultimately did not provide enough assistance for the government to characterize it as substantial.

WHEREFORE, the Government respectfully requests that the Court impose a sentence at the low-end of the recommended Guidelines range, to be followed by three years of supervised release.

        Respectfully submitted,

        JEFFREY A. TAYLOR
        United States Attorney
        D.C. Bar No. 498-610

        _____
        GLENN S. LEON
        Assistant United States Attorney
        New York Bar
        555 4th Street, N.W., Room 4112
        Washington, DC  20530
        (202) 305-0174

**CERTIFICATE OF SERVICE**

I HEREBY certify that a copy of the foregoing has been sent by first class mail and facsimile (202-628-2881) to counsel for the defendant, James W. Rudasill, Jr., 601 Indiana Avenue, N.W., #500, Washington, D.C.  20004, this 27th day of March, 2008.

        _____
        Glenn S. Leon
        Assistant United States Attorney