UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | Crim No. 05-416 (RWR) |
| ) | **UNDER SEAL** |
| **JOSEPH LANGLEY** ) | |
| **Defendant** ) | |
| _____) | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

COMES NOW, the defendant, Joseph Langley, by and through counsel, and respectfully requests that the Court impose a reasonable sentencing of not more than 63 months imprisonment after consideration of the November 1, 2007 amendments to Section 2D1.1 of the advisory United States Sentencing Guidelines. Defendant argues below that he is entitled to an additional downward adjustment of 3-levels in his **Total Offense Level (29)** calculated in the Presentence Report (PSR at p.5). Mr. Langley further contends that his total adjusted offense level should be downwardly adjusted to **Level 26 (63-78 months**) not **Level 29,** in order to address the government's bad faith in failing to move for a 5K1.1 departure. The defendant believes that any "reasonable sentence" taking into account the advisory Guidelines and the purposes of sentencing as set forth in the Sentencing Reform Act of 1984, (18 U.S.C. 3553(a)) should include **at least** a 3-level downward adjustment in offense level because of the government's Departure Committee's decision to deny Mr. Langley's request for a 5K1.1 departure motion is based on an unsubstantiated "suspicion" that Langley had been deceptive during a 2005 polygraph in responding to questions concerning his then girlfriend's (a Metropolitan Police officer) knowledge of his fugitive status while they were visiting his sister and daughter in South Carolina,

during the month before his apprehension.

    1. The, Metropolitan Police Officer at question, Sergeant Tammy Lane, was cleared of any wrongdoing by the Internal Affair Division after an 15-months investigation of these allegations and has been restored to full duty.   Moreover, Sergeant Tammy Lane, has expressed a willingness to testify during these sentencing proceeding, if permit by this Court.   As related to counsel, the Sergeant's testimony would be that at no time prior to Mr. Langley's arrest was she aware of any criminal activities on his part.   Mr. Langley's claim of governmental bad faith arises from the fact that the U.S. Attorney's Office approved the MPD Internal Affairs Office no-action letter which permitted the restoration of Sergeant Lane Washington's police powers, yet has chosen to deny defendant a 5K1.1 departure recommendation, despite conceding that "One the positive side, Mr. Langley debriefed shortly after he was brought to the jurisdiction, and provided some credible and corroborated information regarding various acts of drug dealing in Congress Park and elsewhere." [Government's Sentencing Memo at p. 3.]   Defendant contends that by acknowledging a lack of credible evidence to proceed administratively against Sergeant Lane, the government cannot rely upon the defendant's alleged deceptive statements to the law enforcement officer's during a polygraph examination as a basis to refuse to file a departure motion pursuant to the plea agreement.  The government's refusal to file a 5K1.1 motion, under the known circumstances of this case constitutes "bad faith" which rises to the level of  "governmental misconduct."  **See generally**, ***United States v. Lopez,* 106 F.3d 309 (9th Cir. 1997)** [Holding that prosecutorial misconduct may be a basis for downward departure under then **mandatory** Sentencing Guidelines] ***Compare, U.S. v. Dockery***, **965 F.2d 1112, 1116 (D.C. Cir. 1992)** [Holding that allegation of misconduct amounting only to claim of misuse of prosecutorial authority which does not reach constitutional dimensions is not a basis for departure under

**mandatory** Sentencing Guidelines.]  **But see, *Rita v. United States***, 127 S. Ct. 2465,2468 **(2007)** [ Under the ***post-BOOKER*** regime, the District Court may conclude that the guideline sentence fails to reflect Sec. 3553(a) considerations, reflects an unsound judgment, does not treat defendant characteristics in the proper way, or that a different sentence is appropriate "regardless": *id. At 2463*.]   And in cases where the plea agreement stipulates that the Court retains complete discretions to determine how much of a sentencing reduction to grant a defendant once a defendant qualifies for a  5K1.1 departure, the court may impose a sentence below the statutory mandatory minimum although the plea agreement fails to specifically cite Sec 3553(e).  **See,** *United States v. McIntosh*, **484 F.3d 832 (6th Cir. 2007).**

### I.  Factual Summary:

1. On November 22, 2005, the defendant pleaded guilty pursuant to a written plea agreement to a superseding information in which he was which charged with Conspiracy to Distribute and Possess with the Intent to Distribute 50 Grams or More of Cocaine Base in violation of Title 21 U.S.C. Secs. 841(a)(1) and 841(b)(1)(A)(iii).  As a result of his guilty plea, Mr. Langley faces a statutory mandatory minimum sentence of 10 years and a potential maximum sentence of life imprisonment at sentencing which is presently schedule for April 3, 2008.  This defendant admitted to a government's proffer of evidence which stipulated that as relevant conduct he was accountable under Section 2D1.1 of the Guidelines for at least 500 grams but less than 1.5 kilograms of "crack" cocaine base  .

2. Mr. Langley further agreed in the proffer of evidence that from the mid-1990's until shortly before his arrest in April 2005, he purchased and sold wholesale quantities of crack cocaine in the 1300 block of Congress Street, S.E.   This District of Colombia neighborhood is know as "Congress Park." Mr. Langley's role in the conspiracy, relative to that ascribed by the

prosecution to Antwan Ball or David Wilson, was that he was "like the 7/11 convenience store, whereas these other co-conspirators were like Safeway."  The largest quantity of crack cocaine that Mr. Langley ever purchased or sold during the course of his participation in the conspiracy was 62 grams, approximately 1/16 of a kilogram.  The government has conceded that there is no evidence that Mr. Langley engaged in any acts of violence relative to his involvement in the conspiracy.  Notably, for purposes of his governmental bad faith/ misconduct claim, Mr. Langley asserts that he has provided to the government truthful, complete and corroborated information concerning drug dealing and acts of violence by other "co-conspirators and other individuals" during the 7-8 debriefings which he participated in as required by Paragraph 5(a) of the Plea agreement filed with the Court on November 22, 2005.

**II.  The Government Refusal to File a Sec. 5K1.1 Motion, under the Known Circumstances of this Case, Constitutes Bad Faith.**

     3.  In its Memorandum in Aid of Sentencing, filed on March 27, 2008, the government argues that Mr. Langley:

"While, (the defendant).. provided some assistance to the government, the Departure Committee ultimately concluded, after careful consideration that on balance, Mr. Langley's assistance did not rise to the level of substantial assistance, Accordingly the government is not recommending to this Court that Mr. Langley receive a sentencing departure pursuant Section 5K1.1 of the Sentencing Guidelines and/or 18 U.S.C. Sec. 3553(e).  However, in light of Mr. Langley's admission of guilt, debriefings, criminal history, and age, the government does not oppose Mr. Langley receiving the benefits of the safety valve provision, and a sentence at the low-end of the recommended Sentencing Guidelines range" [Govt's Sent. Memo., at p. 3].

Defendant concedes that under both the Guidelines Sec. 5K1.1 and the statutory provision of Title 18 U.S.C. Sec. 3553(e) the government's decision to not recommend a departure is generally unreviewable by a District Court.  **See,** *In re Sealed Case*, **449 F. 3d 118 (D.C. Cir. 2006)** [In the absence of a government motion for a substantial assistance downward departure, the district court cannot impose a sentence below the statutory minimum].  The exception to this

rule is that a District Court can review the government's refusal to file a substantial assistance motion only to determine whether the decision was tainted by bad faith or constituted an abuse of discretion, i.e, (1) was the decision animated by an unconstitutional motive, or (2) not rationally related to a legitimate government end.  **See, United States v. Williams, 374 F.3d 941 (10th Cir. 2004); see, also United States v. Zuniga-Rios, 193 Fed. Appx. 195 (4th Cir. 2006**).  Moreover, as herein, the government cannot rely upon known pre-agreement circumstances in declining to file a substantial assistance motion pursuant to the cooperation agreement.  **See, United States v. Roe, 445 F.3d 202 (2nd Cir. 2005)**  In **Roe,** the Second Circuit held that a defendant was entitled to an evidentiary hearing on his claim that the government had acted in bad faith in declining to file a substantial assistance motion pursuant to a cooperation agreement, given the lack of any post-agreement proffer sessions or requests to testify in other cases and possibly, on the existing record, that government based its decision solely on its knowledge of defendant's alleged untruthfulness regarding matters discussed prior to execution of the plea agreement.  **Ibid.**

4. The government argues that Mr. Langley was denied downward departure motion because he allegedly absconded from the jurisdiction and failed a polygraph examination. [Govt's Sentencing memo at pp. 3-4].  By the governments own admissions, both of these events, if true, occurred before the execution of the plea agreement on November 22, 2005.  While defendant concedes that the government in order to rebut a claim of bad faith the government only needs to show an honest dissatisfaction with the defendant's cooperative efforts, the government may not rely on known pre-agreement circumstances in declining to file a substantial assistance departure motion.  **See, Roe, supra.**

5. After reference to counsel's records, defendant avers that he submitted to not less that six (6) multi-hour debriefings with various Assistant U.S. Attorneys (primary Jeffrey Beatrice and

Glenn Leon) and a number of FBI special agent's commencing on May 31, 2005, and continuing at a pace of approximately one per month up through and including November 4, 2005. During these debriefing defendant provided truthful information, to the best of his knowledge, regarding all matter for which the authorities posed questions. The only area of disagreement among the parties was Mr. Langley responses concerning MPD Sgt. Lanes knowledge of his fugitive status while they were in South Carolina. As alluded to above, Sgt. Lane has agreed to testify about he lack of knowledge of the defendant was a fugitive, under oath, at the sentencing hearing in this case. She has agreed to testify in an effort to put this matter to rest by permitting the government to "hear it for the horse's mouth" and in part, because she believes Mr. Langley is being unfairly denied a departure motion pursuant to Sentencing Guidelines Section 5K1.1 solely due to her status as a police officer. Mr. Langley requests a hearing on this bad faith claim.

6. Mr. Langley has been held without bond in this case since his arrest on April 27, 2005, and as of April 3, 2008, will have served 35 an 3/4 months of pretrial detention.

### III.  The Presentence Report's Advisory Guidelines Range

7. The Presentence Report (at pg. 4, para. 12) properly reflects that under 2007 Amendments to Section 2D1.1(a) Mr. Langley's Base Offense Level is **34.** The probation officer has adjusts this base offense level downward by two levels as Mr. Langley qualifies for the Safety Valve adjustment (PSR at pg. 4, para. 13, *citing* USSG 5C1.2). Moreover, Mr. Langley believes he should be awarded an additional two levels for his Minor Role in the so-called "Congress Park" conpiracy pursuant to USSG 3B1.2(b)) for a total of 4 levels resulting in a n Adjusted Offense Level of 30. The defendant has also been properly awarded a 3- level decrease for acceptance of responsibility pursuant to USSG 3E1.1 (a) and (b) the defendant. (*See,* the PSR at pg. 5, para. 19). The defendant believes that his Total Adjusted Offense Level should be further

reduce by 1- Level to Level 26 under USSG 5K2.0 in recognition of the government's bad faith in not filing a 5K1.1 motion.

8. Likewise, the defendant, through counsel, is of the view that his Criminal History Category has been properly calculated in the Presentence Report as Category I.  And, that the correct advisory Sentencing Guidelines range which should apply in this case, 63 to 78 months imprisonment, should be state at pg. 9, para. 47 of the Presentence Report.

9. However, the defendant contends, and argues below, that there are mitigating factors and circumstances which make an "advisory" Guidelines sentencing range of 63 to 78 months greater than necessary impose a "reasonable" and "just" punishment under Section 3553(a) of the Sentencing Reform Act. **See, Booker v. United States,**, **543 U.S. 220, 125 S.Ct. 738 (2005).**  A district judge must include the Guidelines range in the array of factors warranting consideration, but the judge may determine that, in the particular case, a within-Guidelines sentence is "greater than necessary" to serve the objectives of sentencing, §3553(a).  **See, David Kimbrough v. United States,  551 U.S._____(App. No. 06-6330, Slip Op. at pg. 5., Dec 10, 2007).**

**III.   The Advisory Sentencing Guidelines range of 87 to 108 months calculated in the PSR  imposes excessive punishment and is greater than necessary to achieve the purposes of Section 3553(a).**

A. The Federal Sentencing Scheme after *BOOKER*

10. Section 3553 of Title 18 of the United States Code is the statutory basis of the Federal sentencing structure. Congress delegated to the United States Sentencing Commission, pursuant to 18 U.S.C. §§ 993 and 994, authority to enact the United States Sentencing Guidelines. In *Mistretta v. United States,* **488 U.S. 361 (1989)**, the Supreme Court upheld the Sentencing Reform Act of 1984 ("SRA") and Congress' delegation of power to the Sentencing Commission.

11. In ***United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738 (2005)**, the Supreme Court ruled that the Sixth Amendment, as interpreted by the Court's decision in ***Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004),** mandates that the Guidelines can no longer operate as mandatory sentencing rules. The Court reaffirmed the Court's holding in ***Apprendi v. United States*, 530 U.S. 466 (2000**). That is, any fact, other than a prior conviction, that increases the penalty for a crime beyond the facts established by a guilty plea or jury verdict must be proved to a jury beyond a reasonable doubt or admitted by the defendant. ***Booker*, 125 S.Ct. at 760-61.**

12. In the second part of the decision, the Court held that two provisions of the SRA, 18 U.S.C. § 3553(b)(1) (the provision of the federal sentencing statute which requires sentencing courts to impose a sentence within the applicable Guidelines range, absent a basis for departure) and 18 U.S.C. § 3742(e) (the provision that establishes standards for appellate review) must be severed and excised. *Id.,* at 764.Thus, the Guidelines are now "effectively advisory." *Id.,* at 743. A sentencing court is court is <u>not</u> required to adhere to the Guidelines. ***United States v. Price,* 409 F.3d 436, 442 (D.C. Cir. 2005**). Nevertheless, a sentencing court is still required to "consult [the] Guidelines and take them into account when sentencing." ***Id.*, at 435 (quoting *Booker,* 125 S.Ct. at 745).** *Id.*

13. Section 3553(a) requires sentencing courts "<u>to impose a sentence sufficient, but not greater than necessary</u>, to comply with the purposes set forth" in the SRA. Those purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .18 U.S.C. § 3553(a)(2)(emphasis

added).

In determining the sentence minimally sufficient to comply with Section 3553(a)(2), the sentencing court must consider several factors listed in Section 3553(a). These are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the kinds of sentence available"; (3) the Guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) Guideline range; (4) "the need to avoid unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct"; and (5) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(1), (a)(3)--(a)(7).

**B. DISCUSSION**

14. After examining the facts in this case and applying all of the Section 3553(a) factors, we ask the Court to impose a sentence that would require no more than 63 months imprisonment. This requested sentence, we submit, is no greater than necessary to achieve the goals of the Sentencing Reform Act of 1984, ("SRA").

A. Nature and Circumstances of Offense and History and Characteristics of Mr. Langley (18 U.S.C. § 3553(a)(1)).

As discussed above, Mr. Langley 's participation in the Congress Park conspiracy was limited to being the drug dealer of last resort. Mr. Langley usually sold small amounts, "8-balls and 1/4ounce (7grams) quantities to retail street dealers. He was not involved in any of the violence attributed to other members of the "Congress Park Crew" and in fact regularly gave back to the community through his sponsorship of a youth boxing program.

15. Mr. Langley is aware that he has admitted to committing a very serious crime. He has already taken steps to prepare himself to reenter the workplace after he is released from prison. Mr.

Langley has a substantial employment history and was honorably discharged from the U.S. Army. During his pretrial incarceration, Mr. Langley has completed a drug counseling course and serves as a student minister and bible study teacher at the Corrections Corporations of America-CTF.

16. Under the Guidelines, courts are not to consider a defendant's family ties and responsibilities and community ties. *See,* U.S.S.G. § 5H1.6. However, "the [G]uidelines' prohibition of considering these factors cannot be squared with § 3553(a)(1)'s requirement that the court evaluate the "history and characteristics" of Mr. Langley. **See United States v. Ranum, 353 F.Supp.2d 984 (E.D. Wis. 2005)**.

17. Mr. Langley requests that the Court take into consideration in fashioning a sentence that he has a now 14-year old daughter (Kierra) who is in the care and custody of her mother and stepfather in Texas. Kierra as been negatively affected by her father incarceration in that one of the reasons Mr. Langley traveled to South Carolina in April, 2005 was to celebrate his daughters birthday.

### B. The Kinds of Sentences Available (18 U.S.C. § 3553(a)(3)). Request for Variance

18. Since the Guidelines are now advisory, the sentencing table and the restrictions on probationary sentences, sentences of home confinement, and split sentences in U.S.S.G. §§ 5A, 5B1 and 5C1 are also advisory. Notwithstanding, the offense to which Mr. Langley has pled guilty calls for a sentence in the range (by counsel's calculations) of 63 to 78 months, defendant requests that the Court find that a reasonable sentence which constitutes just punishment in this case would be satisfied through the imposition of a sentence of imprisonment of 36 months or less. Mr. Langley further requests that the Court waive the imposition of any fine as he is presently unemployed.

### D. The Need to Avoid Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct (18 U.S.C. § 3553(a)(6)).

19. Section 3553(a)(6) directs sentencing judges to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Mr. Langley has pled guilty to conspiracy to possess with the intent to distribute cocaine base and has admitted that he a drug seller. However, as the Court is aware, none of the trial defendants were convicted on Count One - the conspiracy charge. Any sentences that have been or will be imposed in the related cases are not relevant to the Court's consideration of an appropriate sentence in this case. We espouse this position out of a belief that the government does not dispute that Mr. Langley is less culpable than the trial defendants in Docket 05-100, with respect to his participation in four of the 73 counts constituting the overt acts of the conspiracy charged in this case.

**E. The Need to Provide Restitution to Any Victims of the Offense (18 U.S.C. § 3553(a)(7)).**

20. Section 3553(a)(7) directs sentencing judges to consider "the need to provide restitution to any victims of the offense." There are no discernable victims who incurred a financial loss in this case.

**IV. CONCLUSION**

21. The Sentencing Reform Act provides a list of goals for sentencing judges to consider when imposing sentence, including: (1) promoting respect for the law, (2) providing just punishment for the offense given the circumstances, (3) affording adequate deterrence for criminal conduct, (4) protecting the public, and (5) providing Mr Langley with reasonable rehabilitative services. A reasonable sentence no greater than 36 months in prison will achieve the above-listed objectives.

At a minimum, the defendant believes the Court should, under the totality of the factors to be considered under Sec. 3553(a), should grant to him a **Booker** variance and impose a sentence at the bottom of Offense Level 26 at Criminal History Category - I of not more than 63 months.

        Respectfully submitted,
        **Joeseph Langley, by counsel:**

        _____
        JAMES W. RUDASILL, JR
        D.C. Bar No. 318113
        717 D Street, N.W , Suite 200
        Washington, D.C. 20006
        (202-783-7908)

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing Notice was served by hand delivery on Glenn Leon Assistant United States Attorney, 555 Fourth Street, NW, Washington, D.C. 20530, this 31st day of March, 2008.

        _____
        James W. Rudasill, Jr.